UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| interMart, Inc., a Minnesota corporation, d/b/a Shipping Solutions,<br><br>Plaintiff,<br><br>vs.<br><br>Kewill Solutions North America, Inc. a Massachusetts corporation,<br><br>Defendant. | No.: 05 CV 1862 JNE/SRN<br><br>**COMPLAINT**<br>(Trademark Infringement)<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff, interMart, Inc., d/b/a Shipping Solutions, ("Shipping Solutions"), as and for its Complaint against Defendant Kewill Solutions North America, Inc. ("Kewill"), state and allege as follows:

## PARTIES

1. Shipping Solutions is a Minnesota corporation whose principal place of business is 4867 Safari Pass, Eagan, Minnesota 55122.

2. Kewill is a Massachusetts corporation whose principal place of business is 100 Nickerson Road, Marlborough, Massachusetts 01752.

## JURISDICTION AND VENUE

3. This is an action for trademark infringement under 15 U.S.C. §§ 1114 and 1125(a); trademark dilution under 15 U.S.C. § 1125(c) and Minn. Stat. § 333.285; deceptive trade practices under Minn. Stat. §325D.77; and unfair competition.

4. The Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1367. Upon information and belief, Kewill conducts business on a nationwide basis, including within the State of Minnesota and within

SCANNED
AUG 1 7 2005
U.S. DISTRICT COURT MPLS

district, and Kewill has committed the acts complained of in the State of Minnesota and in this jurisdiction. Kewill is therefore subject to the jurisdiction of this Court. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Kewill conducts business in this District and the conduct which forms the basis of the claims occurred in whole or in part in this judicial district.

## SHIPPING SOLUTIONS' TRADEMARK RIGHTS

5. Shipping Solutions produces and sells SHIPPING SOLUTIONS® computer software, which is the number one selling export documentation software brand in the United States. The first version of SHIPPING SOLUTIONS® software was offered in 1996 and Shipping Solutions now provides this export documentation software to thousands of U.S. and Canadian companies.

6. Shipping Solutions' SHIPPING SOLUTIONS® trademark was first used in commerce in or about 1996. The trademark was registered on the principal register by Shipping Solutions with the United States Patent and Trademark Office on July 29, 1997 as U.S. Trademark Registration No. 2,083,425, covering the use of this mark in connection with "computer software for shipping letters and packages overseas, namely, software for automatically completing export documentation." Attached hereto as Exhibit A is an excerpt from the U.S. Patent and Trademark Office database showing the ownership and details concerning Shipping Solutions' U.S. Reg. No. 2,083,425.

7. On February 4, 2003, Section 8 and Section 15 Declarations were accepted and acknowledged by the United States Patent and Trademark Office. The SHIPPING SOLUTIONS® registration is incontestable.

8. Since its creation, Shipping Solutions' SHIPPING SOLUTIONS® export documentation software has been perennially considered the top-selling export documentation

software on the market. According to a survey published in the Institute of Management and Administration's March 2004 *Managing Exports* periodical, SHIPPING SOLUTIONS® software commanded over 24% of the market for export software products. This market share was twice that of the nearest competitor. Attached hereto as Exhibit B is a true and correct copy of the aforementioned article.

9. Shipping Solutions has expended considerable and significant resources, time, effort, and expense to promote, advertise and popularize its SHIPPING SOLUTIONS® trademark in connection with export documentation software. As a result of these activities by Shipping Solutions, individuals and companies who are consumers and users of these products have come to recognize, know, and rely upon the SHIPPING SOLUTIONS® trademark to identify and distinguish Shipping Solutions' products from the products made and sold by competing companies.

10. Shipping Solutions has used the SHIPPING SOLUTIONS® trademark in commerce continuously for nearly 10 years. As a consequence of the long and extensive use of the mark, the SHIPPING SOLUTIONS® mark and brand has obtained substantial recognition and goodwill among consumers of export documentation software and other similar products, and is recognized by consumers of such products as a mark and brand which designates products manufactured by Shipping Solutions.

11. Shipping Solutions has an ongoing interest in the SHIPPING SOLUTIONS® trademark and brand to designate its products and to distinguish its export documentation software from products manufactured and sold by others.

12. Following registration of the SHIPPING SOLUTIONS® trademark, Shipping Solutions has used the trademark in commerce and has given notice that it is registered with the

United States Patent and Trademark Office by displaying the trademark with the ® symbol following or adjacent to the trademark. Thus, Kewill and other competitors of Shipping Solutions have been on actual and constructive notice that Shipping Solutions' SHIPPING SOLUTIONS® trademark is owned by Shipping Solutions and duly registered with the United States Patent and Trademark Office.

### KEWILL'S INFRINGEMENT

13. Kewill manufactures and sells export documentation software and other similar products. As a consequence, Kewill is a direct competitor of Shipping Solutions. Shipping Solutions and Kewill market and sell the aforesaid mentioned products to the same or similar consumers through the same channels of commerce and distribution.

14. Upon information and belief, Kewill has recently adopted the mark SHIPPING SOLUTIONS for its export documentation software and other similar products.

15. Kewill is using the SHIPPING SOLUTIONS mark in its advertising literature, web sites, and otherwise in interstate commerce as a trademark to designate export documentation software and other similar products that do not originate from Shipping Solutions. Attached hereto as Exhibit C is a true and correct copy of an excerpt from Kewill's website showing an example of Kewill's unauthorized and infringing use of Shipping Solutions' SHIPPING SOLUTIONS® federally registered mark.

16. Kewill's use of the SHIPPING SOLUTIONS® mark to designate its export documentation software and other similar products infringes Shipping Solutions' SHIPPING SOLUTIONS® trademark. Kewill's use came long after Shipping Solutions' now incontestable registration and Kewill does not have permission or authority from Shipping Solutions to use the registered trademark SHIPPING SOLUTIONS®.

17. Upon information and belief, the conduct of Kewill in using Shipping Solutions' incontestable trademark is not coincidence, but instead constitutes intentional, purposeful infringement designed and intended to cause mistake and confusion among consumers regarding the source, origin, sponsorship, approval, and affiliation of Kewill's goods and the goods of Shipping Solutions.

18. Upon information and belief, Kewill knew at the time it began using the identical SHIPPING SOLUTIONS mark that consumers associated SHIPPING SOLUTIONS® with Shipping Solutions' software.

19. Despite notice from Shipping Solutions, Kewill continues to use the SHIPPING SOLUTIONS mark in interstate commerce in connection with the sale and advertising of its export documentation software and other similar products.

20. Upon information and belief, Kewill's conduct as described herein and its use of the aforementioned mark is willful and intentional and has been undertaken purposefully to cause confusion and mistake, and to deceive consumers in the marketplace regarding the source, origin, production, sponsorship, and affiliation of products manufactured by Kewill.

## COUNT I
## Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114(1)(a)

21. Shipping Solutions restates, realleges and incorporates herein by reference Paragraphs 1 through 20 of the Complaint.

22. Kewill's use of the SHIPPING SOLUTIONS mark infringes Shipping Solutions' rights under the Lanham Act, 15 U.S.C. § 1114(1)(a), and specifically infringes Shipping Solutions' registered trademark SHIPPING SOLUTIONS®.

23. Kewill's conduct as alleged herein is likely to cause confusion and mistake in the marketplace and among consumers of export documentation software and other similar products,

and is likely to deceive consumers of said products regarding the source, origin, manufacturer or quality of said goods. More specifically, Kewill's conduct as alleged herein is likely to confuse, cause mistake, or to deceive consumers regarding the source, origin, affiliation, connection or association of Kewill and its products with Shipping Solutions and its products.

24. Upon information and belief, Kewill's infringement of Shipping Solutions' registered trademark SHIPPING SOLUTIONS® has been committed willfully with the intent to cause confusion and mistake and to deceive consumers.

## COUNT II
### Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1125(a)

25. Shipping Solutions restates, realleges and incorporates herein by reference Paragraphs 1 through 24 of the Complaint.

26. Kewill has manufactured, sold and caused to enter into interstate commerce export documentation software and other similar products bearing the mark SHIPPING SOLUTIONS.

27. The use of said SHIPPING SOLUTIONS mark constitutes a false designation of origin which is likely to cause confusion and mistake and is likely to deceive consumers and the public generally as to the affiliation, connection or association of Kewill with Shipping Solutions and its products, and to cause confusion and to deceive consumers as to the origin, affiliation, association, sponsorship or approval of Kewill's software.

28. These acts are in violation of 15 U.S.C. § 1125(a).

29. Upon information and belief, these acts of infringement have been committed by Kewill willfully and with the intent to cause confusion and mistake and to deceive consumers in the marketplace.

## COUNT III
## Trademark Dilution Under the Lanham Act, 15 U.S.C. § 1125(c)

30. Shipping Solutions restates, realleges and incorporates herein by reference Paragraphs 1 through 29 of the Complaint.

31. Shipping Solutions' SHIPPING SOLUTIONS® trademark has been and is being extensively used and advertised on a nationwide basis in connection with export documentation software. The SHIPPING SOLUTIONS® trademark is widely recognized by consumers and is a distinctive and famous mark pursuant to 15 U.S.C. §1125(c) and has been distinctive and famous prior to Kewill's first use of the infringing and diluting mark.

32. Kewill's commercial use of the SHIPPING SOLUTIONS® mark in connection with export documentation software and other similar products has diluted and will continue to dilute the distinctive quality of the SHIPPING SOLUTIONS® trademark and the unique association which has heretofore existed between the SHIPPING SOLUTIONS® trademark and goods manufactured and controlled by Shipping Solutions. Kewill's unauthorized use of the SHIPPING SOLUTIONS® mark lessens the capacity of the SHIPPING SOLUTIONS® trademark to identify and distinguish Shipping Solutions' goods.

33. Upon information and belief, Kewill's use of the SHIPPING SOLUTIONS® mark is willful and with the intent to trade on the reputation and goodwill of Shipping Solutions and has caused and will continue to cause dilution of Shipping Solutions' distinctive and famous SHIPPING SOLUTIONS® trademark.

## COUNT IV
## Trademark Dilution Under Minn. Stat. § 333.285

34. Shipping Solutions restates, realleges and incorporates herein by reference Paragraphs 1 through 33 of the Complaint.

35. The SHIPPING SOLUTIONS® trademark has been extensively used and advertised on a nationwide basis, including within the State of Minnesota, in connection with export documentation software. The SHIPPING SOLUTIONS® trademark is widely recognized by consumers, including those located within the State of Minnesota, and is a distinctive and famous mark within the State of Minnesota and elsewhere.

36. Kewill's commercial use of the SHIPPING SOLUTIONS mark in connection with export documentation software and other similar products has diluted and will continue to dilute the distinctive quality of the SHIPPING SOLUTIONS® trademark and the unique association which has heretofore existed between the SHIPPING SOLUTIONS® trademark and goods manufactured and controlled by Shipping Solutions. Kewill's unauthorized use of the SHIPPING SOLUTIONS mark lessens the capacity of the SHIPPING SOLUTIONS® trademark to identify and distinguish Shipping Solutions' goods.

37. Upon information and belief, Kewill's use of the SHIPPING SOLUTIONS mark is willful and with the intent to trade on the reputation and goodwill of Shipping Solutions and is likely to cause and has caused dilution of Shipping Solutions' distinctive and famous SHIPPING SOLUTIONS® trademark.

## COUNT V
## Deceptive Trade Practice Under Minn. Stat. § 325D.44

38. Shipping Solutions restates, realleges and incorporates herein by reference Paragraphs 1 through 37 of the Complaint.

39. The SHIPPING SOLUTIONS® mark is a "trademark" as defined under and pursuant to Minn. Stat. § 325D.44.

40. Upon information and belief, Kewill has engaged in deliberate and intentionally deceptive trade practices by using the registered trademark of Shipping Solutions to designate

8

products made by Kewill. Kewill has willfully adopted and used the SHIPPING SOLUTIONS mark in the course of its business in order to create confusion in the marketplace and to take unfair advantage of the reputation and goodwill of Shipping Solutions. Upon information and belief, Kewill's conduct is a deliberate violation of Minnesota law.

41. By using the aforesaid mark in the course of its business, Kewill is passing off its goods as those of Shipping Solutions.

42. Kewill's use of the SHIPPING SOLUTIONS® mark in the course of its business to designate its export documentation software and other similar products is likely to cause confusion as to the source, sponsorship, approval, endorsement or certification of Kewill's goods and Shipping Solutions' goods.

43. Kewill's conduct is also likely to cause confusion or misunderstanding as to any affiliation, connection or association between Shipping Solutions and Kewill.

44. Kewill's actions violate Minn. Stat. § 325D.44.

## COUNT VI
## Unfair Competition

45. Shipping Solutions restates, realleges and incorporates herein by reference Paragraphs 1 through 44 of the Complaint.

46. Kewill's conduct as alleged and described herein constitutes unfair competition under the common law, as well as infringement of Shipping Solutions' registered trademark rights.

47. Upon information and belief, Kewill has acted with the intent to deceive the public into believing that goods manufactured and sold by Kewill are made by, approved by, sponsored by or affiliated with Shipping Solutions. Kewill's acts as alleged herein were committed with the intent to pass off and palm off Kewill's goods as Shipping Solutions' goods,

and with the intent to deceive and defraud the public. Kewill has purposefully and deliberately infringed on the valuable trademarks of Shipping Solutions as alleged herein in order to trade on Shipping Solutions' goodwill and reputation, and thereby deceive the public and purchasers of Kewill's goods and to obtain an unfair competitive advantage.

48. Said conduct as alleged herein constitutes unfair competition under the common law and under the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44, et. seq.

## COUNT VII
## Allegation of Damage and Irreparable Injury

49. Shipping Solutions restates, realleges and incorporates herein by reference Paragraphs 1 through 48 of the Complaint.

50. As a direct and proximate result of Kewill's acts as alleged herein, Shipping Solutions has suffered and will continue to suffer damage to their business, reputation and goodwill, and have lost and will lose sales and profits which Shipping Solutions would have made but for Kewill's improper, unlawful and illegal conduct.

51. Kewill's acts as described herein have caused Shipping Solutions irreparable harm. Moreover, Kewill will continue to do the acts complained of herein and will continue to cause Shipping Solutions irreparable harm unless retrained and enjoined by the Court. Shipping Solutions has suffered a monetary injury, but Shipping Solutions' remedy at law is not adequate to compensate it for the injuries caused and threatened by Kewill's actions.

## JURY DEMAND

52. Shipping Solutions demands a jury trial on all issues triable to a jury.

WHEREFORE, Shipping Solutions asks the Court to:

1. Enter judgment against Kewill and in favor of Shipping Solutions and to award monetary damages in an amount to be determined at trial;

2. Award Shipping Solutions treble the amount of actual damages it suffered as a result of Kewill's wrongful acts;

3. Preliminarily and permanently enjoin Kewill and its agents, servants and employees from directly or indirectly using or infringing the SHIPPING SOLUTIONS® trademark, and from using any other mark, word or name similar to Shipping Solutions' incontestable trademark that is likely to cause confusion or mistake, or to deceive;

4. Order Kewill to carry out corrective advertising and attach to its products a disclaimer of affiliation with Shipping Solutions, to cure the confusion and deception that has been caused in the marketplace by Kewill's conduct as described and alleged herein;

5. Order that all items, including packaging, advertising, brochures, catalogs and other materials in the possession of Kewill bearing the SHIPPING SOLUTIONS mark be delivered up and destroyed;

6. Award Shipping Solutions punitive and exemplary damages against Kewill by reason of Kewill's intentional and willful misconduct and palming off;

7. Award Shipping Solutions its costs and attorneys' fees incurred in this action; and

8. Grant Shipping Solutions such other relief as the Court deems just and equitable herein.

Dated: **August 17**, 2005

WINTHROP & WEINSTINE, P.A.

By _____
Stephen R. Baird, #0214024
David A. Davenport, #0285109
Suite 3500
225 South Sixth Street
Minneapolis, Minnesota 55402
(612) 604-6400
*Counsel for Shipping Solutions*

2440165v1



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Trademarks > Trademark Electronic Search System (TESS)

# Trademark Electronic Search System(Tess)

*TESS was last updated on Tue Aug 16 04:18:51 EDT 2005*

[TESS HOME] [NEW USER] [STRUCTURED] [FREE FORM] [BROWSE DICT] [BOTTOM] [HELP]

[Logout] Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

[TARR Status] [ASSIGN Status] [TDR Status] [TTAB Status] *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | SHIPPING SOLUTIONS |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: computer software for shipping letters and packages overseas, namely, software for automatically completing export documentation. FIRST USE: 19951204. FIRST USE IN COMMERCE: 19960105 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 75088964 |
| **Filing Date** | April 16, 1996 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | May 6, 1997 |
| **Registration Number** | 2083425 |
| **Registration Date** | July 29, 1997 |
| **Owner** | (REGISTRANT) interMart, Inc. CORPORATION MINNESOTA 1684 East Cliff Road Burnsville MINNESOTA 55337 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SHIPPING" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | LIVE |



EXHIBIT A

[TESS HOME] [NEW USER] [STRUCTURED] [FREE FORM] [BROWSE DICT] [TOP] [HELP]

*Editor:*
Chris Horner

*Managing Editor:*
David Solomon

*Desktop/Design Editor:*
Eleni Giakamozi

*Editorial Coordinator:*
Gale Shangold

*Group Managing Editor:*
Janice Prescott

*Group Publisher:*
Perry Patterson

*Executive Director:*
David L. Foster


Published monthly by the Institute of Management & Administration, Inc.



# IOMA'S REPORT ON MANAGING EXPORTS

THE LEADING SOURCE OF INFORMATION ON REDUCING RISK & EXPANDING INTERNATIONAL SALES

ISSUE 04-03     http://www.ioma.com/     MARCH 2004

## Exclusive ME Survey
## How Are Export Mgrs. Automating Processes to Enhance Operations?

ME's recent survey on automation of export processes contains a wealth of data on how U.S. exporters coast-to-coast are utilizing software programs to gain a competitive edge. Our survey reveals which export software products are most popular, what export processes these managers are automating, and how they are using the Internet for a wide variety of functions. For example, some 33.1% of our respondents currently use an export software product (see Table 1), up from 27.9% in last year's ME survey. At larger exporters (those with over 500 employees), 48.4% are using an export software program.

However, demonstrating that stand-alone export software is not the only way to automate export functions, fully 89.3% of our respondents report using the Internet to automate a wide variety of functions, from compliance to shipment tracking to international sales and marketing. When it comes to Internet use, smaller exporters (those with under 500 employees) even edge out the larger ones—89.6% to 88.9%. Access to the Internet to automate various export-related processes is often free through the Web sites of carriers, forwarders, and various U.S. government departments—making this an especially attractive alternative for smaller shippers.

**Shipping Solutions Tops Survey**
For the second survey in a row, when respondents were asked which export software product they are using, Shipping Solutions' Shipping Solutions software (888-890-SHIP; www.shipsolutions. com) came out on

**Table 1. Are You Currently Using Export Software? (by Number of Employees)**

|  | Under 500 | 500 and over | Overall |
|---|---|---|---|
| Yes | 24.2% | 48.4% | 33.1% |
| No | 75.8 | 51.6 | 66.9 |

**Table 2. Which Export Software Product Do You Use? (by Number of Employees)**

|  | Under 500 | 500 and over | Overall |
|---|---|---|---|
| **Shipping Solutions** | 29.4% | 19.0% | 24.4% |
| Vastera | - | 19.0 | 12.2 |
| MSR Visual Exporter | - | 19.0 | 9.8 |
| Exits Inc. | 11.8 | - | 4.9 |
| MKdenial | 5.9 | - | 4.9 |
| Dutycalc | - | 4.8 | 2.4 |
| DynaComm/FutureSoft | 5.9 | - | 2.4 |
| Export Pro Writer | 5.9 | - | 2.4 |
| JDEdwards Oneworld | 5.9 | - | 2.4 |
| OCR | - | 4.8 | 2.4 |
| Open Harbor | - | 4.8 | 2.4 |
| Oracle | 5.9 | - | 2.4 |
| SAP | - | 4.8 | 2.4 |
| SPEX | 5.9 | - | 2.4 |
| Track Base | - | 4.8 | 2.4 |
| Trade Point | - | 4.8 | 2.4 |

EXHIBIT B

top, upholding this provider's claim to being "America's Number One Export Documentation Software." In evaluating this result, it's important to note that this software is primarily for export documentation, not for a full range of processes. At a cost starting at $499, Shipping Solutions allows export managers to quickly produce a dozen standard export forms, file the Shipper's Export Declaration (SED) electronically through the Automated Export System (AES), and monitor all shipping expenses. It's no wonder that this software, used by 24.4% of respondents, is popular at both larger and smaller exporters (see Table 2).

|  |  |  |  |
|---|---|---|---|
| Transexport | 5.9 | - | 2.4 |
| Proprietary | 17.6 | 14.3 | 14.6 |

**Table 3. For Which Functions Are You Using Export Software? (by Number of Employees)**

|  | Under 500 | 500 and over | Overall |
|---|---|---|---|
| Documentation | 51.4% | 41.5% | 47.9% |
| Compliance/screening | 18.9 | 25.5 | 23.4 |
| Logistics/transport | 21.6 | 17.6 | 19.1 |
| Payment/credit/collections | 8.1 | 11.8 | 9.6 |

In second place, with 12% of respondents, is Vastera's TradeSphere (www.vastera.com). MSR's Visual Exporter finished third, at 9.8%. Given the significant cost of these multifaceted trade management solutions, it's no surprise that only respondents at large companies report using them. The Vastera system, for example, depending on how many modules are installed, can run from $65,000 to $130,000.

There was a tie for fourth place—between Exits Inc.'s Global Wizard for Export Documentation (www.exitsinc.com) and MK Data Services' MKdenial.com (202-463-0904)—each used by 4.9% of our survey respondents. Garnering 2.4% in our survey are 11 other export software programs. Also worthy of note is the fact that 13.5% of respondents report using proprietary "home-built" export software, both at smaller (8.1%) and larger (5.4%) exporters.

### What Functions Are Automated Most?
Table 3 shows that ME's survey respondents are using automation to gain efficiencies and cut costs in four key areas of exports: documentation, compliance, logistics, and payment/credit/collections. Among these export managers, export documentation is far and away the most common function being automated (by 47.9% overall), and almost equally among export pros at larger and smaller companies. About a quarter (23.4%) are using export software to help them comply with U.S. export laws, including screening denied-party lists. A solid 19.1% have installed software programs that allow them to automate various aspects of shipping and logistics, such as checking carrier rates and schedules and tracking shipments. Among ME survey respondents, 9.1% also report using export software to automate key credit checking functions and enable electronic payments and collections. In all cases, export pros at both larger and smaller companies report quite similar results for all four areas.

Once again, it should be noted that these figures do not take into account the large number of respondents using the Internet to automate these and other functions.

### Web-Based Export Automation
Our survey respondents report accessing Webbased export software to automate no fewer than 14 key export processes. Following the pattern of respondents using stand-alone export software, the function most often accessed is export compliance, by 21% of our respondents. Given the high costs— in bad publicity, fines, and lost sales—of noncompliance with U.S. export laws, this is not a surprising result. Shipment tracking and tracing of export cargo is the second-most-utilized Web-based automation function (17% of respondents). In today's competitive environment, knowing exactly where your cargo is and being able to reassure your customer of the delivery date is a crucial competitive advantage.

The third place result, international sales and marketing (15% of respondents), is an indicator of the growing number of Web-based resources serving this function, both on U.S. government and other Web sites. In many cases, such sites allow export pros to not only research promising markets, but also to

actually link up with potential buyers and even complete deals—all online. Some 10% of responding export pros go online to speed up the all-important shipping functions, from researching and comparing carrier rates to booking transport and warehousing services.

© 2005 Shipping Solutions - America's #1 Export Documentation Software - All rights reserved.

PO Box 22267 • Eagan, MN 55122 • PH: 651-905-1727 • FX: 651-905-1827 • E-Mail: info@shipsolutions.com

# Shipping Solutions by ■ KEWILL
The leader in enterprise shipping management solutions



| Home | Division | Solutions | Customers | Partners | News & Events | Contact Us |



Kewill's shipping management solutions are built on the latest technology, highly scalable, and maximize fulfillment and delivery performance. Our domestic and international carrier support is unmatched.

World-class supply chains run on Kewill shipping solutions

**...and a company that could support us globally", Joe Stannard, vice president, logistics - CooperVision, Inc.**

Kewill Solutions North America is the leading provider of enterprise shipping management solutions and shipping software. We offer the broadest set of shipping management solutions, from our Clippership solution addressing the needs of small to medium enterprises to our Flagship product family, which provides advanced solutions and software for the world's largest corporations. Kewill customers achieve significant cost savings, improved customer service, better supply chain visibility, and streamlined fulfillment processes.

Contact Us | Newsletter | Support | Investor | Group Home | Sitemap
© Kewill Systems plc 2005. All Rights Reserved | Privacy Statement

